IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

OSVALDO GOMEZ )
)
v. ) No. 3:15-1056
)
CAROLYN W. COLVIN, Acting )
    Commissioner of Social Security )

To:     The Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action *pro se* pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Title II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry Nos. 25, 26),[1] to which Defendant has filed a response (Docket Entry No. 27).

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry Nos. 25, 26) be **DENIED**.

---

[1] Plaintiff filed two documents under the heading, "motion for judgment on the record," which include a total of seven pages. Docket Entry Nos. 25, 26. For purposes of this Report and Recommendation, the Court will consider these filings as a single motion for judgment on the record.

# I. INTRODUCTION

Plaintiff filed an application for DIB and SSI on October 11, 2011. *See* Transcript of the Administrative Record (Docket Entry No. 12) at 74-77.[2] He alleged a disability onset date of May 1, 2010. AR 74-75. Plaintiff asserted that he was unable to work because of a neck injury, shoulder injury, and heart problems. AR 82-83.

Plaintiff's applications were denied initially and upon reconsideration. AR 74-77. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Elizabeth P. Neuhoff on March 20, 2014. AR 34. On May 15, 2014, the ALJ denied the claim. AR 11-13. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 5, 2015 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on May 15, 2014. AR 11. Based upon the record, the ALJ made the following enumerated findings:

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

1. The claim meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

***

3. The claimant had the following medically determinable impairments through the date last insured for Title II purposes: asthma, a cervical spine disorder with a history of cervical spine fusion, and a history of supraventricular tachycardia (20 CFR 404.1520(c) and 416.920(c)). However, none of these impairments was "severe" within the meaning of the Regulations prior to or at the time of the date last insured.

***

4. The claimant now has the following severe impairments: a history of asthma that is now diagnosed as chronic obstructive pulmonary disease, a cervical spine disorder with a history of cervical spine fusion, supraventricular tachycardia, dysthymic disorder, and a history of polysubstance abuse in remission (20 CFR 404.1520(c) and 416.920(c)).

***

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can lift or carry 20 pounds on occasion and 10 pounds frequently. He can sit, stand, or walk 6 hours total each and he is limited to occasional climbing of ladders, ropes, and scaffolds and can frequently perform all other postural activities; is limited to frequent overhead reaching and frequent forceful gripping with either upper extremity; is limited to frequent repetitive neck motion, such as turning and twisting of the neck; must avoid concentrated exposure to extremes of temperature, along with fumes, odors, gases, and poor ventilation, such that it might be considered a pulmonary irritant, and to hazards in the workplace such as unprotected heights or moving machinery; is able to understand, remember and perform simple and lower-level detailed (1-3 step) tasks, but cannot make independent decisions at an executive level; is able to maintain concentration, persistence, and pace for simple tasks, along with low-level detailed tasks (but not higher level multi-step detailed) without significant difficulty with customary breaks; is able to interact appropriately

with the general public, coworkers and supervisors and is able to set limited goals and adapt to infrequent change within the work place.

***

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

***

8. The claimant was born on July 3, 1968 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant has remained such an individual throughout the period in question (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

***

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

***

12. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 16-29.

## III. REVIEW OF THE RECORD

Defendant and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A

reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also*

*Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If the claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v.*

*Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 16-29.

**D. Plaintiff's Assertions of Error**

Plaintiff does not present an assertion of error in his motion for judgment on the record, and instead requests that the Court ask the ALJ why she mentioned Plaintiff's green card during his hearing. DE 25 at 1-2. Plaintiff also asks the Court to consider the statements of the Vocational Expert ("VE") in response to the ALJ's questions regarding Plaintiff's condition, and additionally asks the Court to review the audio recording of his hearing. *Id.* at 2; DE 26 at 1. Although not explicitly stated, the Court assumes that Plaintiff requests that the Commissioner's decision should be reversed and/or remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Whether Plaintiff was denied due process during his hearing before the ALJ.**

Plaintiff requests that the Court listen to the audio recording of his hearing before the ALJ in order to "verify … what actually happen[ed]" during the hearing. DE 26 at 1. Plaintiff suggests prejudice on the part of the ALJ, claiming that she asked multiple times to see

Plaintiff's green card. DE 25 at 1-2.³ Plaintiff thus asks the Court to question the ALJ regarding her inquiry into the status of his green card. *Id.*

Plaintiff also asks the Court to review the audio from his hearing in order to hear the unrecorded discussion that took place at the beginning of the hearing following his request for a drink of water. AR 40. Plaintiff claims that he made this request after suffering "a little asthma attack." DE 26 at 1. While Plaintiff's assertion most closely resembles a claim that he was denied due process, he fails, however, to argue that anything inappropriate or otherwise violative of due process rights occurred during this off-the-record exchange.⁴

The Court's role in a Social Security claim is confined to a review of the administrative record presented to the ALJ. *Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 597 (6th Cir. 2014) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)). The Court is rarely permitted to consider evidence outside of the administrative record. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 839 (6th Cir. 2016) ("[C]onsideration of evidence outside the administrative record is proper under some circumstances, *e.g.,* for background information ... or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision.") (internal citations and quotations omitted). No such grounds for analysis beyond the administrative record exist in this case. Indeed, Plaintiff provides no reason for the Court to take the extraordinary step of reviewing the audio recording of the hearing that took place before the ALJ, and the Court accordingly declines to do so.

---

³ The Court assumes that Plaintiff refers to the "green card" that indicates an individual's status as a permanent resident in the United States.
⁴ Additionally, it appears from the administrative record that Plaintiff was given a break during the hearing to get a drink of water. AR 40. When the hearing resumed, no issue was raised by Plaintiff or his counsel about his ability to continue due to an asthma attack or about any issue that would evoke due process concerns.

Again, although not stated as such, the statements made by Plaintiff about the ALJ's questions regarding his green card imply that he was denied due process during his hearing. Administrative law judges are presumptively impartial adjudicators who "exercise their power with honesty and integrity." *Navistar Int'l Transp. Corp. v. U.S. E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991) (internal citations omitted). To overcome this presumption of impartiality, a claimant has the burden of providing "convincing evidence that 'a risk of actual bias or prejudgment' is present." *Id.* (quoting *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975)). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.* Plaintiff fails to meet this test.

The Court cannot find the requisite evidence of prejudice from the administrative record. It is true that the ALJ made inquiries into Plaintiff's citizenship during his hearing, including the following exchange:

> ALJ: Mr. Gomez, are you an American citizen?
>
> Plaintiff: Yes, ma'am.
>
> ALJ: When did you become one?
>
> Plaintiff: In Nashville.
>
> ALJ: Okay. What year was it that you took your –
>
> Plaintiff: 2000.
>
> ALJ: --test?
>
> Plaintiff: 2000.

AR 50. The "test" cited here ostensibly refers to the civics test that applicants for U.S. citizenship are required to take. Plaintiff's answer that he took this test in 2000 suggests that he

did, in fact, apply for U.S. citizenship. However, Plaintiff later stated that he was born in Puerto Rico, which is a United States territory, which means, of course, that he is a U.S. citizen by birth. AR 62. The VE advised the ALJ of this fact near the end of the hearing:

> VE: Your honor, may I point something –
>
> ALJ: Sure.
>
> VE: --out? [Plaintiff] said that he was born in Puerto Rico. So he's a U.S. citizen by birth. So –
>
> ALJ: Okay. All right. Thanks for pointing that out.

AR 70. Plaintiff's motion for judgment on the record poses the question of why the ALJ asked for his green card on two occasions and "pressured [him] over it." *See* Docket No. 35 at 1.

The ALJ's inquiries about Plaintiff's residency status, while perhaps lacking in judiciousness, and clearly taken by Plaintiff as offensive, without more, fail to demonstrate bias on the part of the ALJ.[5] *See Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004) (finding that although "a few of the ALJ's questions were somewhat improvident ... [a]n

---

[5] Despite this finding, the undersigned notes with disapproval the ALJ's efforts to truncate the translated portions of the hearing by asking Plaintiff's attorney to agree to such: "[J]ust for efficiency purposes, do you agree that only questions that I ask of [Plaintiff] need to be [interpreted], [] rather than the entire proceeding of the hearing?" AR 39. Despite initial reservations, counsel for Plaintiff ultimately agreed to explain the VE's testimony to Plaintiff following the hearing. AR 39-40. Additionally, Plaintiff answered questions without a need for translation (AR 45-46), and when he had difficulty understanding parts of the proceeding, he asked for translation (AR 71). Plaintiff's attorney also had ample opportunity to ask questions of Plaintiff and of the VE and to clarify any matters that might have been unclear. Ultimately, the Court is unable to find that Plaintiff was prejudiced by any action on the part of the ALJ or the interpreter with respect to the translation. *See Patel v. Gonzales*, 125 Fed.App'x. 283, 290 (6th Cir. 2005) (violation of due process occurs only when translation was prejudicial by significantly affecting outcome of hearing). Additionally, "[n]o principle of administrative law or common sense requires ... remand [of] a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Fisher v. Bowe*, 869 F.2d 1055, 1057 (7th Cir. 1989)) Here, for the reasons stated below, the ALJ's determination was supported by substantial evidence, meaning there is no reason to believe that remand might lead to a different result.

objective observer, listening to the hearing as a whole, would not have been convinced from the conduct of the hearing that the ALJ's fairness need be questioned."). Plaintiff does little more than point to an adverse ruling, which is insufficient to support a finding of bias on the part of the ALJ. *Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 788 (6th Cir. 2010) (citing *First Nat'l Monetary Corp. v. Weinberger,* 819 F.2d 1334, 1337 (6th Cir. 1987)).

The standard for a finding of a due process violation is very high, and a claimant bears the burden of making a "strong showing" of bias on the part of the ALJ. *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)); *see also Navistar Int'l Transp. Corp.*, 941 F.2d at 1360 ("[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference."). Plaintiff falls short of this burden, claiming only that the ALJ inappropriately asked about the status of a green card without any showing that the ALJ's inquiries were prejudicial or significantly affected the outcome of the hearing.[6] The Court therefore finds that Plaintiff was not denied due process during his hearing.

**2. Whether the ALJ's decision to deny benefits was supported by substantial evidence.**

The Court next addresses whether the ALJ's decision was supported by substantial evidence. The Court is obligated to affirm the denial of benefits unless the ALJ applied the

---

[6] The Court can only speculate as to whether the ALJ would have realized that Mr. Gomez is a U.S. citizen by virtue of being born in Puerto Rico without the VE's communication of such. Regardless, the ALJ ultimately found that Plaintiff met the insured status requirements for purposes of receiving DIB under Title II through December 31, 2010, meaning that Plaintiff was subject to payroll taxes under the Federal Insurance Contributions Act through that date. AR 16-17. Additionally, even if the ALJ continued to believe that Plaintiff was a lawful permanent reside ("LPR"), or "green card" holder, this status would still have allowed him to qualify for SSI under relevant Social Security regulations. *See Understanding Supplemental Security Income SSI Eligibility Requirement*, SSA.gov, https://www.ssa.gov/ssi/text-eligibility-ussi.htm.

wrong legal standard, made findings of fact that were not supported by substantial evidence, or failed to follow regulations governing disability determinations that prejudiced Plaintiff on the merits or deprived him of a substantial right. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 363 (6th Cir. 2014).

The primary basis for the ALJ's denial of DIB involves Plaintiff's date last insured. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). In the case at hand, Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010. AR 16-17. However, the record shows that Plaintiff was seen on just three occasions prior to December 31, 2010, with one such visit consisting of treatment for a corneal abrasion on February 16, 2010 after a wood splinter temporarily got stuck in his left eye. AR 262-64. He was prescribed antibiotic eye drops and released the same day. AR 264-65.

The other two visits took place on July 18 and 25 of 2010. On July 18, Plaintiff was seen at the Nashville General Hospital emergency room for heart palpitations, where he was diagnosed with tachycardia. AR 247, 249. Plaintiff left the emergency room that same day, against the advice of his medical provider, and was discharged with a pain score of zero out of 10. AR 248, 252. An x-ray of Plaintiff's chest was negative for cardiopulmonary disease and demonstrated normal heart and pulmonary vasculature. AR 260. Plaintiff was treated one week later for palpitations at the Southern Hills Medical Center emergency room, where he was again diagnosed with tachycardia and released the same day. AR 214-17.

As noted by the ALJ, this evidence is so scarce that a State agency physician who reviewed the records was unable to present an opinion regarding Plaintiff's alleged condition

prior to the date last insured. AR 268. During the hearing, the ALJ advised counsel for Plaintiff that this lack of evidence represented a significant obstacle to his claim. AR 44. The ALJ thus gave Plaintiff an extra week following the hearing to amend his alleged onset date so that he might improve his ability to demonstrate a disabling condition prior to the date last insured (AR 44), an offer that Plaintiff ultimately declined.

In her opinion, the ALJ discussed how none of the three impairments present in the medical record, asthma, cervical spine disorder, and tachycardia, constituted a "severe" impairment under the applicable Social Security regulations. AR 17-19. The ALJ noted that Plaintiff did not receive any treatment for asthma between his alleged onset date and the date last insured. AR 18. The ALJ similarly noted that although an x-ray of Plaintiff's chest incidentally demonstrated that a cervical spine fusion surgery had previously been performed, the record indicated that Plaintiff's cervical symptoms were "completely asymptomatic" prior to the date last insured and failed to demonstrate any functional limitations stemming from a cervical impairment. AR 18. The ALJ also addressed how Plaintiff's two emergency room visits in July of 2010 failed to establish the presence of a severe impairment prior to the date last insured:

> [H]e left one [visit] against medical advice, and the other failed to result in overnight hospitalization. His report of the nature and frequency of the tachycardia events associated with this condition show that, at the very worst, he experienced chest pain, shortness of breath, and a pounding heart rate for about 10 minutes several times a year. This duration and frequency alone is insufficient to cause any significant limitation of work activity. Plus, [Plaintiff's] actions toward treating the condition, such as leaving against medical advice and not following up with a cardiologist or other physician … suggest his day-to-day symptoms were minimal, or likely not present at all during baseline periods.

AR 19. Plaintiff makes no argument that the ALJ erred in her analysis, nor does he provide any evidence to support a claim that his impairments constituted a severe impairment prior to the date last insured, which is his burden. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997)

("Claimant has the ultimate burden of proving the existence of a disability.") (citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)). The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff was not subject to a severe impairment prior to his date last insured.

The Court additionally finds that substantial evidence supports the ALJ decision to deny Plaintiff's claim for SSI. The ALJ determined that following the date last insured, Plaintiff suffered from multiple severe impairments, including chronic obstructive pulmonary disease ("COPD"), cervical spine disorder, tachycardia, dysthymic disorder, and a history of polysubstance abuse in remission. AR 19.[7] The ALJ determined that these impairments caused functional restrictions that limited Plaintiff to the performance of light work with additional restrictions as delineated in the RFC. AR 21. She provided a detailed discussion of the medical treatment Plaintiff received from December of 2011 through January of 2014, which revealed unremarkable cardiac and respiratory examinations in October of 2012, a decrease in neck pain in January of 2013, and a normal musculoskeletal examination in March of 2013. AR 22-25. The ALJ explained the basis of her findings by specifically comparing Plaintiff's allegations regarding his physical impairments to the medical evidence of record. AR 25-26. The ALJ also noted that, while Plaintiff has been diagnosed with dysthymic disorder and substance abuse, he has not alleged any problems stemming from a mental illness, has not sought mental health treatment in over a decade, has not required any medication to treat mental illness, and has

---

[7] The ALJ did not specify the date of onset of these impairments. However, 20 C.F.R. § 416.501 states that the payment of SSI benefits "may not be made for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." Therefore, for purposes of Plaintiff's SSI claim, the Court assumes an onset date of October 11, 2011, which is the date on which Plaintiff filed his application. AR 75.

demonstrated social activities that are inconsistent with the presence of significant mental health limitations. AR 26.

Furthermore, the ALJ sufficiently discussed the weight she assigned to the opinions provided by the State agency physicians who examined Plaintiff and reviewed the medical records pertaining to his alleged physical and mental impairments. AR 26-27. The ALJ explained that the physical portion of the assigned RFC represented a combination of the physical restrictions recommended by Dr. Bruce Davis and Dr. Evelyn Davis (AR 26-27), and that the mental component of the RFC similarly consisted of a combination of the mental limitations recommended by Dr. Michael Hawthorne and Dr. Jayne Dubois. AR 27.[8] Both of these determinations are permitted under relevant Social Security regulations. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.") (citing 42 U.S.C. § 432(d)(5)(B)).

The ALJ also explained that she gave "some weight" to the opinion provided by Dr. Pradumna Singh, allegedly a treating neurologist, in a "Physical Capacities Evaluation Form" completed on March 17, 2014, but clarified that this opinion did not receive controlling weight due to the paucity of the actual opinion. AR 27. Indeed, the form completed by Dr. Singh contained a single physical restriction suggesting that Plaintiff was "markedly" limited with respect to his ability to reach, but failed to cite any medical evidence to support this limitation and failed to comment on any other physical activities. AR 521-23.[9] The ALJ thus fulfilled her duty under 20 C.F.R. § 416.927(c)(2) to provide "good reasons" for the weight assigned to a

---

[8] In the opinion, the ALJ refers to Dr. Dubois simply as the "State agency psychological consultant on reconsideration." AR 27.

[9] Dr. Singh expressed an inability to comment on any other physical limitation because he had not performed an evaluation of Plaintiff. AR 523.

treating physician. *See also Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) ("[T]he ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.").

Plaintiff does not challenge any of the ALJ's findings or accompanying explanations, instead relying on a neck radiograph report completed on August 12, 2015, which was included as part of his complaint. DE 1 at 6. However, the Court's review of Plaintiff's claim is limited to consideration of the evidence that was presented during Plaintiff's hearing before the ALJ, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007), thus excluding the report from the Court's purview. Moreover, even if the Court was permitted to consider the radiograph report referenced by Plaintiff, the impression contained in this report indicates that Plaintiff suffers from mild degenerative disc disease and straightening of the normal cervical lordosis (DE 1 at 6), which are findings that were already contained in the record and discussed by the ALJ. AR 22, 279, 420.

The Sixth Circuit has held that the mere diagnosis of a condition does not by itself establish a work-related limitation. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Disability is instead determined by the presence of functional limitations that are caused by a severe impairment. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (internal citation omitted); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal citation omitted). Plaintiff has made no argument that the diagnoses contained in the evidence of record demonstrate functional limitations beyond those contained in the assigned RFC. The ALJ relied on VE testimony to determine that there were jobs in significant numbers in the national economy that

Plaintiff could perform despite these limitations (AR 28-29, 66-70), which was permissible. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (substantial evidence that a claimant has the vocational qualifications to perform other jobs may be produced by reliance on VE testimony) (internal citations omitted). The Court thus finds that substantial evidence supports the ALJ's decision.

## V. RECOMMENDATION

For the above stated reasons, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 25, 26) be DENIED and that the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                              Respectfully submitted,

                                              BARBARA D. HOLMES
                                              United States Magistrate Judge